UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

 UNITED STATES OF AMERICA,

                                        **MEMORANDUM & ORDER**
                  -against-                22-CR-247(EK)


 FRANKLYN STERLING,

                  Defendant.

-------------------------------------x
ERIC KOMITEE, United States District Judge:

          On February 27, 2023, a jury found Defendant Franklyn

Sterling guilty of attempted possession of cocaine with intent

to distribute.  Before the Court are Sterling's motions for a

judgment of acquittal or, in the alternative, for a new trial.

For the reasons set out below, both motions are denied.

                    **I.   Background**

**A.   Relevant Procedural History**

          Sterling was arrested on May 4, 2022, following a

controlled delivery of narcotics supervised by agents from

Homeland Security Investigations ("HSI").  Sterling and a

companion were on the receiving end of this delivery.  He was

indicted on one count of attempting to possess, with intent to

distribute, more than five kilograms of cocaine, in violation of

Title 21, Sections 841(b)(1)(A)(ii)(II) and 846.

1

Trial began on February 22, 2023.  After the government rested its case, Sterling moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29; the Court reserved judgment pursuant to Rule 29(b).  *See* ECF No. 61.  The defense then presented a case.  The jury returned a guilty verdict on February 27, finding that Sterling had attempted to possess more than 500 grams of cocaine rather than the five kilograms charged.

**B.   Evidence at Trial**

    1.   <u>The Government's Case</u>

The government called seven witnesses at trial.  Three of those witnesses testified to the controlled delivery.  The first was a cooperating witness — the Copa Airlines flight attendant who had been arrested at John F. Kennedy International Airport after arriving from Panama with cocaine stowed in his luggage (the "Flight Attendant").  Two law enforcement agents, HSI Special Agents Pablo Huerta and John Moloney, also testified about the delivery.

Through these witnesses, the government established that the Flight Attendant, after being arrested at the airport, promptly agreed to cooperate with law enforcement and deliver "replica" cocaine to the intended recipients.  While still at the airport, the Flight Attendant messaged his Panamanian supplier, known as "Mopri," to ask about the time of the

delivery.  Trial Tr. ("Tr") 79:1-2, 156:7-157:9; Gov't Exs. 300,
300T.[1]  Mopri did not respond, Tr. 79:1-3; instead, the Flight
Attendant received a WhatsApp video call from an unknown woman
at a Colombian number he did not recognize (the "Colombian
Contact").  *Id.* 77:9-78:22, 165:9-12; *see* Gov't Exs. 400, 400T.

        Accompanied by HSI agents, the Flight Attendant then
went to a hotel in Queens.  Tr. 170:18-171:2; *see id.* 79:14-20.
Mopri had previously instructed the Flight Attendant that the
drug delivery would take place there.  *Id.* 164:19-165:1, 167:13-
17.  Once at the hotel, the Flight Attendant reached out to both
Mopri and the Colombian Contact.  *Id.* 183:22-184:15.  Mopri
again did not respond, but the Colombian Contact did.  *Id.*
184:16-185:1; *see* Gov't Exs. 301, 301T.  She directed that he
send her multiple photographs and videos of the cocaine.  Gov't
Exs. 301, 301T.

        After doing so, the Flight Attendant received a call
from another number he did not recognize — this time, one with a
U.S. area code.  Tr. 81:16-82:20, 198:19-24.  This caller said
that he was calling "on behalf of Canelo" and would be coming to
pick up the "zapatillas" (Spanish for shoes) from the Flight
Attendant.  *Id.* 82:24-83:23; Gov't Exs. 401, 401T.  As discussed

---

        [1] Exhibit numbers with a "T" suffix refer to the transcriptions and
translations of the corresponding exhibit.

below, the government contended at trial that Sterling was the speaker on this call, and introduced evidence to that effect.

After that call, the Flight Attendant confirmed with the Colombian Contact that he should deliver the drugs to "Canelo." Tr. 84:15-21, 202:19-203:10; Gov't Exs. 301, 301T. He then received a second call from the U.S. number, with the "the same person" on the line. Tr. 84:23-24. The caller explained that he would be arriving in a few minutes and wearing a red jacket. *Id.* 84:23-85:2; Gov't Exs. 402, 402T.

Shortly thereafter, the Flight Attendant received a third call from the U.S. number. This speaker, who had a "different," "softer voice," informed the Flight Attendant that he was at the hotel's lobby bar. Tr. 85:4-12; Gov't Exs. 403, 403T. The Flight Attendant then met the individual wearing a red jacket, whose voice matched that of the speaker on the third call, and handed over the replica cocaine. Tr. 88:18-89:5.

Special Agent Moloney also testified to the events of the controlled delivery, but from a different perspective: he was positioned outside the hotel. He testified that he observed two individuals (later identified as Sterling and Luis Salinas) drive up to the hotel. *Id.* 367:20-368:1. The individual later identified as Sterling was driving. While Sterling remained in the car, Salinas — wearing a red jacket — went into the hotel. *Id.* 368:1-369:4. Salinas returned with the bag containing the

4

replica cocaine and placed it in Sterling's car, at which time both Sterling and Salinas were arrested.  *Id.* 369:7–370:6.  The agents recovered a black LG cell phone (the "LG Cell Phone"), along with two other cell phones, from Salinas's person.  *Id.* 279:3–21; *see* Gov't Ex. 6.

Phone records presented to the jury established that the LG Cell Phone was registered to the U.S. number that had called the Flight Attendant.  That phone had also been in contact with Mopri, *see* Tr. 312:2–314:21; Gov't Ex. 330, and the Colombian Contact, *see* Tr. 308:22–309:24; Gov't Exs. 305, 305T, on the day of the controlled delivery.  The government did not introduce any subscriber data (such as a name or address) associated with the phone.  It did, however, offer evidence demonstrating that Sterling had used the LG Cell Phone, including to place the "zapatillas" call.  This evidence included WhatsApp messages and voice notes recovered from the LG Cell Phone; testimony from Special Agent Huerta identifying Sterling's voice as that of the New York caller; and audio call recordings of Sterling from 2015.

The government also called a United States Border Patrol Agent, Bradley Audette, who was the case agent in the investigation leading to Sterling's 2016 conviction on federal

narcotics charges in the District of Vermont.  Tr. 380:12–381:7.[2]
Audette testified about Sterling's use of code words to describe
narcotics in the events leading to that conviction.  *Id.* 387:12–
388:1; *see* Gov't Exs. 607, 607T.  Audette also identified the
person in a photograph found on the LG Cell Phone as a
cooperating witness from that case.  Tr. 385:1–386:12; *see* Gov't
Ex. 332; Tr. 102:18–21.  A text message sent from the LG Cell
Phone had labeled the subject of that picture "the VT rat."  *See*
Gov't Ex. 332.  The government argued that this text message,
too, tended to prove Sterling's control over, and use of, the LG
phone.

Maolin Li, a senior forensic chemist at the Drug
Enforcement Administration, testified that the powder substance
seized weighed 5,015.2 grams — in other words, just over five
kilograms.  Tr. 339:14–20, 350:10–18; *see* Gov't Ex. 500.  He
also performed "two separate chemical analyses" on the
substance, which indicated that it contained cocaine.  Tr.
350:24–25, 353:14–17.  Finally, Inspector Alfred Hernendez, from
the New York City Department of Investigation, testified that
the amount of cocaine at issue in the case and its packaging

---

[2] Prior to trial, the Court issued an order conditionally admitting
evidence "relating to Sterling's 2016 conviction" for heroin distribution in
the federal District Court for the District of Vermont, as probative of
Sterling's knowledge and intent (and the absence of mistake) in this case.
*See United States v. Sterling*, No. 22-CR-247, 2023 WL 1967526, *3–4 (E.D.N.Y.
Feb. 12, 2023).

were consistent with distribution, not personal use.  Tr. 407:16–409:9.

  2.  <u>The Defense Case</u>

        The defense put on one witness: Sterling.  He testified that Salinas had called him on the afternoon of the delivery, asking for "a ride to go pick up some clothes and shoes from Panama."  *Id.* 445:7–9.  He then drove Salinas to "his destination" — the hotel — as a favor.  *Id.* 413:3–414:7, 446:6–8.  Sterling further testified that neither he nor Salinas made any phone calls while they were driving to the hotel.  *Id.* 446:11–15.  Instead, he heard Salinas make a call once they had arrived outside the hotel; Salinas said he had "a red hoodie on" and was "coming in."  *Id.* 413:15–20.  Sterling testified that, had he known Salinas was going to retrieve drugs, he would not have gone because he had "learned [his] lesson" after his prior conviction in 2016.  *Id.* 421:1–5.

        Sterling repeatedly denied that the LG Cell Phone belonged to him generally, *see id.* 447:11–13, or that he had used it to call the Flight Attendant about the "zapatillas." *Id.* 446:16–18.  At one point, however, he appeared to admit that "[t]hat phone" — the LG Cell Phone — "belonged to me."  Tr. 430:1–4.[3]

_____

## II.   Defendant's Motion for Judgment of Acquittal

## A.   Legal Standard

Under Rule 29, the court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."  Fed. R. Crim. P. 29(a).  "[A] defendant challenging the sufficiency of the evidence bears a heavy burden, and the standard of review is exceedingly deferential."  *United States v. Martoma*, 894 F.3d 64, 72 (2d Cir. 2017).[4]  The Court "must view the evidence in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor, and deferring to the jury's assessment of witness credibility and its assessment of the weight of the evidence."  *United States v. Jabar*, 19 F.4th 66, 76 (2d Cir. 2021).  The jury's verdict should not be disturbed if "*any* rational trier of fact could

---

[3] The government elicited this apparent admission during Sterling's cross-examination, during a line of questioning about the Vermont confidential informant picture and text message sent from the LG Cell Phone.  *See* Gov't Ex. 332.  Sterling had testified that he had "never seen a picture of Anthony" and did not recognize the text message.  Tr. 428:5-429:3.  In the following colloquy, Sterling testified:

> Q. Do you know where this text message came from?
> A. I don't know where it come from.
> Q. This text message came from the phone that was seized off of Luis Salinas. But that phone belonged to you, didn't it?
> A. That phone belonged to me.

*Id.* 429:2-430:4.

[4] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

have found the essential elements of the crime beyond a reasonable doubt." *United States v. Raniere*, 55 F.4th 354, 364 (2d Cir. 2022).  If, after reviewing the evidence, "the court concludes that either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, the court must let the jury decide the matter." *United States v. Landesman*, 17 F.4th 298, 319 (2d Cir. 2021).

When, as in this case, a court reserves decision on a Rule 29 motion at the close of the government's evidence, "it must decide the motion on the basis of the evidence at the time the ruling was reserved." Fed. R. Crim. P. 29(b).  By contrast, "[i]f a defendant moves for acquittal after the jury convicts, the court considers all evidence presented at trial, including the defense case." *United States v. Hunt*, 573 F. Supp. 3d 779, 792 (E.D.N.Y. 2021); *see* Fed. R. Crim. P. 29(c).

## B.   Application

Sterling's brief does not specify whether his arguments are made in support of his Rule 29(b) motion made at trial, in support of a post-trial motion brought under Rule 29(c), or both.  Indeed, both Sterling and the government cite to evidence introduced during the defense case — namely, Sterling's testimony — that is only appropriate for consideration under Rule 29(c).  While taking care to draw this

distinction, the Court finds that Sterling has failed to meet his burden under either Rule 29(b) or (c).

1.   Rule 29(b)

To sustain a conviction under Section 841, the government must prove beyond a reasonable doubt "that the defendant: (1) knowingly (2) possessed a controlled substance (3) with a specific intent to distribute it." *United States v. Gore*, 154 F.3d 34, 45 (2d Cir. 1998). Because Sterling was charged with attempt under Section 846, the government need only establish that he "had the intent to commit" that crime and "engaged in conduct amounting to a substantial step towards its commission." *United States v. Anderson*, 747 F.3d 51, 73 (2d Cir. 2014). Thus, taken together, the evidence had to be sufficient to permit a reasonable jury to conclude that Sterling: (1) attempted to possess a controlled substance; (2) did so knowing that the substance in question was a controlled substance; and (3) attempted to possess the substance with the intent to distribute it.

Sterling argues that the evidence was insufficient to prove that he *knowingly* attempted to participate in a narcotics transaction.[5] As the Second Circuit has repeatedly recognized,

_____

[5] In challenging the sufficiency of the evidence, Sterling repeatedly asserts that the government failed to prove that he was a "knowing and willing participant in the narcotics conspiracy." *See* Def.'s Mot. 9, ECF No.

"the *mens rea* elements of knowledge and intent can often be
proved through circumstantial evidence and the reasonable
inferences drawn therefrom." *United States v. MacPherson*, 424
F.3d 183, 189 (2d Cir. 2005); *see United States v. Wexler*, 522
F.3d 194, 207 (2d Cir. 2008) ("[The] sufficiency of the evidence
test must consider the Government's case in its totality rather
than in its parts . . . and may be satisfied by circumstantial
evidence alone.").  After reviewing the evidence as a whole and
drawing permissible inferences in the government's favor, the
Court concludes that the evidence was sufficient for the jury to
reach the verdict it did.

Much of the dispute at trial focused on a single
issue: the identity of the user of the LG Cell Phone.  And
unsurprisingly so, as the evidence from that phone would tend to
incriminate its user.  In particular, someone used that LG Cell
Phone — recovered from Salinas moments after the controlled
delivery took place — to call the Flight Attendant about picking
up the "zapatillas."  On the same day, that phone was also in
contact with Mopri, the cocaine supplier in Panama, and the
Colombian Contact.  At trial, the government presented more than
enough evidence for the jury to conclude that Sterling used the

---

73; *see id.* at 8–11.  The government, however, did not charge Sterling with
conspiracy.  The Court construes Sterling's arguments as challenging his
knowledge as to the attempted possession offense.

phone in a manner demonstrating his knowledge of the true purpose of the hotel visit.

First, the government introduced audio recordings of the three calls made between the Flight Attendant and the LG Cell Phone.  The Flight Attendant and Special Agent Huerta described the speaker on two of those calls similarly — as having a "harsh, raspy" and "deep, raspy voice."  Tr. 83:7, 211:4–8.  Special Agent Huerta later identified that voice as belonging to Sterling, based on post-arrest interactions with him.  *Id.* 211:6–8, 267:6–15; *see United States v. Cambindo Valencia*, 609 F.2d 603, 640 (2d Cir. 1979) (explaining that a witness may opine on the identity of a speaker on tape if he "has heard the voice of the alleged speaker at any time").  Moreover, Special Agent Huerta and the Flight Attendant, both of whom had interacted with Salinas on the day of the controlled delivery, testified that Salinas's voice was *not* the one on the "zapatillas" call.  *See* Tr. 85:4–12, 213:4–16, 273:3–19.

Relatedly, and perhaps more critically, the government presented evidence during its case-in-chief permitting the jury to evaluate the identity of the "zapatillas" speaker for itself.  The government introduced several recordings from 2015 in which Sterling, whose identity as the speaker was not in dispute, discussed narcotics distribution with an undercover officer.  *See, e.g.*, Gov't Exs. 604, 607.  As the Second Circuit has

explained, "voice identification is not generally considered to be an area where expertise is important," *Cambindo Valencia*, 609 F.2d at 640, and "[j]uries may listen to an audiotape of a voice and determine who is speaking." *Tyson v. Keane*, 159 F.3d 732, 738 (2d Cir. 1998).  These 2015 recordings thus allowed the jury to compare the voice of the person on the "zapatillas" call with a known exemplar of Sterling's voice, and draw reasonable inferences as to the identity of the LG Cell Phone speaker.

The jury also heard other circumstantial evidence that reasonably supported a conclusion that the LG Cell Phone belonged to Sterling, or — at the very least — that he had used it in the past.  For example, the government introduced text messages found on the LG Cell Phone, including a WhatsApp message that read "is me Frank," *see* Gov't Ex. 307, and the text-message exchange in which the user sent the picture of the confidential informant in Sterling's Vermont narcotics case and described him as "the VT rat."  *See* Gov't Ex. 332.  The government also introduced voice notes found on the LG Cell Phone, in which the speaker refers to himself as "Junito" — or "Junior" in English, Gov't Ex. 314A; Tr. 292:2–22, as well as a contact saved on one of Salinas's phones that identified a phone

number belonging to Sterling as "Frank Jr."  Gov't Ex. 325; Tr. 283:9–20.[6]

From all this evidence, the jury could fairly infer that Sterling used the LG Cell Phone, including to call the Flight Attendant about picking up the "zapatillas."  And once the jury accepted that Sterling was the person operating the LG Cell Phone, the government's proof of knowledge cascaded logically.

First, the fact and timing of the communications between the LG Cell Phone and the individuals associated with the cocaine — the Flight Attendant, Mopri, and the Colombian Contact — demonstrated that Sterling was a knowing participant in the narcotics transaction.  Someone — fairly inferred to be Sterling — used the LG Cell Phone to participate in a three-way call with the same international Panamanian number identified in the Flight Attendant's phone as belonging to Mopri.  *See* Tr. 312:2-314:21; Gov't Ex. 330.  Shortly thereafter, Sterling called the Flight Attendant, who had the (replica) cocaine, about picking up the "zapatillas."  And later that evening, after his arrest, the LG Cell Phone received communications from the Colombian Contact, who had directed the Flight Attendant's drop-off of the drugs.  *See* Tr. 308:22–309:24; Gov't Ex. 305.

---

[6] Special Agent Huerta testified that Sterling provided this phone number as his contact information after his arrest.  Tr. 282:13-283:5.

The government also introduced evidence from which the jury could fairly infer that, in his first call with the Flight Attendant, Sterling used the code word "zapatillas" to refer to cocaine.  That call came shortly after the call with Mopri and after the Flight Attendant had sent the Colombian Contact pictures and videos of the (replica) cocaine.  And the Flight Attendant's subsequent exchange with the Colombian Contact suggests that "zapatillas" meant cocaine: When he asked whether to give "the shoes" to the caller (Sterling), the Colombian Contact confirmed "yes."  *See* Tr. 202:19–203:10; Gov't Exs. 301, 301T.

The jury also heard evidence about Sterling's familiarity with using code words to describe narcotics — namely, the 2015 call recordings during which words like "bun" were used to refer to heroin.  Tr. 387:12–388:1; *see* Gov't Exs. 607, 607T.  Such prior conviction evidence, admitted for non-propensity purposes, is like any other evidence introduced at trial: properly considered in a sufficiency-of-the-evidence analysis.  *See, e.g.*, *United States v. Pitre*, 960 F.2d 1112, 1122 (2d Cir. 1992) (evidence of prior narcotics deal, when considered with other evidence, "was sufficient to support a jury finding that [defendant] intentionally and knowingly participated in a narcotics transaction"); *United States v. Nyenekor*, 784 F. App'x 810, 816 (2d Cir. 2019) (same).  Here,

15

evidence that Sterling previously used and understood code words in discussing narcotics tended to show that he knew he was referring to the cocaine — not shoes — when discussing the "zapatillas" with the Flight Attendant.  Thus, the jury could properly consider Sterling's prior narcotics trafficking endeavors as evidence of his "knowledge" and "intent" in the instant affair, as well as the "absence of mistake" on his part regarding the purpose of the hotel errand.  *See* Fed. R. Evid. 404(b); *see also Sterling*, 2023 WL 1967526, at *3.

The above evidence also suggests that Sterling and his co-conspirators took steps to conceal their activities, further supporting the case for Sterling's knowledge.  *See, e.g.*, *United States v. Requena*, 980 F.3d 30, 44 (2d Cir. 2020) ("Circumstantial evidence could include, for example, a defendant's concealment of his activities."); *United States v. Davis*, 690 F.3d 127, 133 (2d Cir. 2012).  The government's evidence demonstrates a drawn out, sequenced chain of careful communications between and among Sterling, the Flight Attendant, Mopri, and the Colombian Contact in the leadup to the cocaine pickup.  And on his call with the Flight Attendant, Sterling used coded language to refer to the cocaine.  From this evidence, a rational juror could fairly infer that Sterling took these actions because he knew that the bag he was picking up contained narcotics.  *See, e.g.*, *United States v. Canfield*, 758

16

F. App'x 51, 55 (2d Cir. 2018) (evidence that defendants "engaged in convoluted arrangements to receive methylone and used code words in their communications" showed "that they knew it was a controlled substance").

Viewed in its totality, this evidence was more than sufficient for the jury to conclude that Sterling knowingly attempted to participate in the drug transaction.

Sterling does not meaningfully challenge the sufficiency of the evidence on any element apart from knowledge. And for good reason: the evidence was easily sufficient to establish that Sterling attempted to possess cocaine and that he did so with intent to distribute. As to the attempted possession, the government presented evidence establishing that Sterling was arrested moments after the bag containing the replica cocaine was placed in his car. Tr. 369:7–370:6. The government further introduced forensic chemical evidence establishing that the substance seized from the Flight Attendant's bag was, in fact, cocaine. *Id.* 353:14–17; *see* Gov't Ex. 500. As to intent to distribute, the government presented evidence that: (1) the amount of substance containing cocaine weighed over five kilograms; and (2) end users typically purchase cocaine in one- to two-gram quantities packaged in Ziploc bags. Tr. 350:10–18, 407:16–409:9.

In sum, despite the lack of direct evidence, the evidence viewed as a whole was sufficient to permit a rational juror to find beyond a reasonable doubt that Sterling knowingly attempted to possess cocaine with intent to distribute.

2.   Rule 29(c)

The Court briefly addresses Sterling's testimony that he was only outside the Flight Attendant's hotel because Salinas asked him for a ride to that location.  To the extent that Sterling invokes his own testimony in support of his acquittal motion, the Court considers that evidence, together with the government's evidence, under Rule 29(c).  If anything, however, Sterling's testimony only further supported the sufficiency of the evidence for the following reasons.

Sterling focuses on the government's decision not to put on a rebuttal case after he took the stand, arguing that this left his testimony effectively uncontradicted.  *See* Def.'s Mot. 9.  But the government had no legal obligation to put on additional witnesses — and very little strategic or tactical incentive to do so, either, given the strained state of his story.

When a defendant testifies, as Sterling did here, "the jury is entitled to draw negative inferences from the defendant's trial testimony or use it to reach contrary conclusions."  *United States v. Bonventre*, No. 10-CR-228, 2014

WL 3673550, at *3 (S.D.N.Y. July 24, 2014), *aff'd in part*, 646 F. App'x 73 (2d Cir. 2016).  Thus, "because the jury is entitled to disbelieve the defendant's attempts at exculpatory explanation, . . . a testifying defendant might inadvertently add weight to the government's case."  *United States v. Tran*, 519 F.3d 98, 106 (2d Cir. 2008); *see United States v. Velasquez*, 271 F.3d 364, 371 (2d Cir. 2001) ("[A] jury may use its disbelief of a defendant's testimony to supplement the other evidence against him.").

Considering Sterling's testimony in light of the government's evidence, a rational jury could have found Sterling's version of events — that he did not use the LG Cell Phone, had never communicated with any of the parties to the drug transaction, and was only present outside the hotel because Salinas had asked for a ride to pick up clothing — to stretch credulity.  *See Tran*, 519 F.3d at 106 ("A reasonable jury could have found [the defendant's] explanation [that he did not know about the contraband in the vehicle] incredible.").  A jury could have reasonably disbelieved Sterling, for example, when he denied having used the LG Cell Phone to send the picture of the Vermont confidential informant, with the accompanying text message that described that person as "the VT rat."  Tr. 428:5–429:3.  Sterling also repeatedly denied having used or owned the

LG Cell Phone, but at one point, *did* admit "[t]hat phone belonged to me."  *Id.* 430:1-4.

Because the "assessment of witness credibility lies solely within the province of the jury, and the jury is free to believe part and disbelieve part of any witness's testimony," *United States v. Josephberg*, 562 F.3d 478, 487 (2d Cir. 2009), the Court will not disturb the jury's finding of Sterling's guilt on this basis.

### III. Defendant's Motion for a New Trial

**A.    Legal Standard**

Under Rule 33, "the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  Rule 29 and Rule 33 have "different governing legal standards": While Rule 29 directs the Court to view the evidence "in a light most favorable to the government," the "Rule 33 inquiry requires an objective evaluation of the evidence." *Landesman*, 17 F.4th at 319, 331.  Even so, although a trial court enjoys "broader discretion" to grant a new trial under Rule 33 than to grant a judgment of acquittal under Rule 29, "that discretion should be exercised sparingly and only in the most extraordinary circumstances."  *Id.* at 330.

Specifically, "[i]n evaluating a Rule 33 motion, the court must examine the entire case, take into account all facts and circumstances, and make an objective evaluation, keeping in

mind that the ultimate test for such a motion is whether letting a guilty verdict stand would be a manifest injustice." *United States v. Alston*, 899 F.3d 135, 146 (2d Cir. 2018).  While a court "may weigh the evidence and credibility of witnesses," "it must take care not to usurp the role of the jury," which is tasked with resolving conflicting evidence and assessing witness credibility. *Landesman*, 17 F.4th at 330.  Thus, "a district court may not grant a Rule 33 motion based on the weight of the evidence alone unless the evidence preponderates heavily against the verdict to such an extent that it would be 'manifest injustice' to let the verdict stand." *United States v. Archer*, 977 F.3d 181, 188 (2d Cir. 2020).  Only in "exceptional circumstances" — where, for example, "the evidence was patently incredible or defie[s] physical realities," or "the government's case depends upon strained inferences drawn from uncorroborated testimony" — should a court grant a new trial. *Landesman*, 17 F.4th at 331.

## B.  Application

In challenging the sufficiency of the evidence under Rule 33, Sterling simply incorporates the arguments he raised for his Rule 29 motion. *See* Def.'s Mot. 12.  After reviewing and making an objective assessment of all the facts and circumstances presented at trial, including those detailed above in relation to Sterling's Rule 29 motion, the Court concludes

that the trial evidence does not "preponderate[] heavily" against the jury's verdict, such that it would be a "manifest injustice" to let that verdict stand.  *See Archer*, 977 F.3d at 188.  Instead, there was a sufficient basis for the jury to conclude that Sterling was a knowing participant in the attempted drug transaction.  Sterling, moreover, has identified no "exceptional circumstances" — nor has the Court, in its assessment — to justify a new trial here.  *Landesman*, 17 F.4th at 331.

Sterling's alternative argument on his Rule 33 motion — that the jury must have found him guilty based on his prior drug conviction — also falls short.  Contrary to Defendant's assertion, Def.'s Mot. 12, the government did not improperly suggest that Sterling's "prior conviction made it impossible for him to be anything but a knowing participant" in the drug pick-up.

Instead, consistent with this Court's prior *motion in limine* order, the government introduced evidence of Sterling's prior narcotics offense for permissible purposes under Federal Rule of Evidence 404(b), including his knowledge and intent.  For example, evidence of Sterling's familiarity with using code words to discuss narcotics suggested that, in this case, he knew he was referring to narcotics when calling them "zapatillas." *See United States v. Gaviria*, 116 F.3d 1498, 1532 (D.C. Cir.

1997) (evidence that defendants used code words to discuss prior heroin purchases "shed light upon the defendants' use of code words" to discuss cocaine purchase).  This evidence, once introduced, also served other non-propensity purposes as well. The 2015 call recordings, for example, provided the jury with a known exemplar of Sterling's voice that it could consider in evaluating the identity of the speaker on the "zapatillas" call. Similarly, evidence relating to the Vermont confidential informant, whose picture was found on the LG Cell Phone, was relevant and probative of the issue of that phone user's identity.

Finally, in charging the jury, the Court issued an explicit instruction, agreed upon by the parties, directing the jury as to the proper purposes for which it could consider such evidence.  *See, e.g.*, *United States v. Batista*, 684 F.3d 333, 342 (2d Cir. 2012) ("[W]e presume that a jury follows the instructions of the court.").[7]  A new trial on this ground is therefore not warranted.[8]

_____

[7] Defense counsel also could have, but did not, request a limiting instruction during trial at the time the government introduced the prior conviction evidence.

[8] Sterling, in a *pro se* letter submission received as an exhibit at the April 10, 2023 bond hearing, appears to raise several challenges relating to Salinas's non-appearance at trial.  *See* ECF No. 81.  "Pursuant to its docket-managing authority, a district court may reject purported pro se motions filed by a represented defendant."  *United States v. DiPietro*, No. 02-CR-1237, 2007 WL 3130553, at *1 (S.D.N.Y. Oct. 17, 2007) (collecting cases)*; see*

## IV.  Conclusion

For the foregoing reasons, Sterling's motions for a judgment of acquittal or, in the alternative, for a new trial are denied.

SO ORDERED.


                                    /s/ Eric Komitee
                              ERIC KOMITEE
                              United States District Judge


Dated:     June 1, 2023
           Brooklyn, New York

---

*also* Fed. R. Crim. P. 49(b)(4) (requiring that, when a defendant is represented by counsel, "every written motion and other paper must be signed by at least one attorney of record in the attorney's name").  The Court therefore does not address Sterling's *pro se* arguments, which are not included in his motion signed by counsel.