

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

ALK:JBD/GP                                  *271 Cadman Plaza East*
F.#2022R00436                               *Brooklyn, New York 11201*

January 11, 2024

By ECF

The Honorable Eric R. Komitee
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:   United States v. Franklyn Sterling
>       Criminal Docket No. 22-247 (EK)

Dear Judge Komitee:

The government respectfully submits this letter in anticipation of sentencing in the above-referenced case, which is scheduled for January 18, 2024 at 10:00 a.m. On February 27, 2023, following a three-day trial, a jury convicted the defendant of attempted possession with intent to distribute cocaine, in violation of Title 21, Untied States Code, Section 841(a)(1). For the reasons set forth below, the government respectfully submits that a sentence of 168 months' imprisonment, the high-end of the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") range, is warranted in this case.

I.      Background

        A.   Offense Conduct

On the night of May 4, 2022, the defendant Franklyn Sterling was arrested after attempting to retrieve a package containing over five kilograms of cocaine from a flight attendant (the "Flight Attendant") who had attempted to smuggle that cocaine into the United States from Panama. Pre-Sentence Investigation Report ("PSR") ¶¶ 1-7. The Flight Attendant had been arrested at John F. Kennedy International Airport ("JFK") earlier that morning and had agreed to assist the government in conducting a controlled delivery to the intended recipient of the cocaine—later determined to be the defendant. Id. ¶ 1.

Prior to his arrest, the defendant had phone calls and exchanged text messages with co-conspirators to facilitate the smuggling and delivery of the cocaine: the supplier in Panama, a middleman and the Flight Attendant. Id. ¶¶ 4-5. The defendant then arrived at the

Queens hotel at which the Flight Attendant was staying with a passenger, Luis Salinas ("Salinas"). The defendant directed Salinas to retrieve the package from the Flight Attendant, which he believed contained cocaine, but in fact contained replica cocaine prepared by agents from the United States Department of Homeland Security, Homeland Security Investigations ("HSI"). When Salinas went inside the hotel to pick up the package from the Flight Attendant, the defendant waited in his car with the car running. Both Salinas and the defendant were arrested at the scene after Salinas came back and placed a backpack containing the replica cocaine into the defendant's car.

Shortly after his arrest, Salinas waived his Miranda rights and agreed to speak to HSI agents. See id. ¶ 7. Salinas informed the agents that the defendant asked Salinas to accompany the defendant to collect a bag from Queens. When the defendant and Salinas arrived at the hotel, the defendant gave one of his cell phones[1] (the "Cell Phone") to Salinas and instructed Salinas to call the Flight Attendant and collect a bag from the Flight Attendant at the hotel. Id.

On May 5, 2022, the defendant was charged by a complaint for attempting to possess with intent to distribute more than five kilograms of a substance containing cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(ii). See Complaint, ECF No. 1. The defendant was released on bond and remained out on bail until his trial conviction. See Minute Entry dated May 5, 2022; ECF No. 2.

On May 27, 2022, a grand jury sitting in the Eastern District of New York returned a one-count indictment charging the defendant with attempted possession with intent to distribute more than five kilograms of a substance containing cocaine, in violation of Title 21, United States Code, Sections 841(b)(1)(A)(ii)(II) and 846. See Indictment, ECF No. 8. The defendant was arraigned on the indictment on June 8, 2022. See Minute Entry dated June 8, 2022.

B. The Defendant's Criminal History

The defendant has two prior convictions for narcotics-trafficking offenses. In 2001, the defendant was arrested in Panama while attempting to smuggle 26 kilograms of cocaine from Panama into the United States via Newark Liberty Airport. PSR ¶ 21. The defendant served four years in a Panamanian jail in connection with that offense. Id. In 2015, the defendant pled guilty in the United States District Court for the District of Vermont to

---

[1] Incident to Salinas' arrest, HSI agents recovered a total of three phones on Salinas' person, one of which was the Cell Phone, and Salinas informed the agents that the defendant gave Salinas the Cell Phone once they arrived at the hotel. Incident to the defendant's arrest, the agents recovered an additional phone on the defendant's person. On May 18, 2022, the government obtained a judicially authorized warrant to search both the Cell Phone and the phone that was recovered from the defendant's person. As demonstrated during the trial, the Cell Phone contained overwhelming evidence that it belonged to and was used by the defendant.

heroin distribution arising from a scheme to import cocaine and heroin from Panama into the United States. Id. ¶ 22. The defendant was sentenced to 20 months' imprisonment in connection with that offense. Id.

In addition to his criminal convictions, the defendant also has multiple arrests for violent crimes. In particular, in 2017, the defendant was indicted in the United States District Court for the Southern District of New York for committing a gang-related murder through the use of a firearm. Id. ¶ 29. Those charges were ultimately dismissed. Id.

C. Relevant Pre-Trial Proceedings

On September 20, 2022, the defendant moved to suppress evidence recovered from the Cell Phone. See ECF No. 20. On December 21, 2022, the defendant filed an affidavit in connection with that motion in which he attested under penalty of perjury that he drove to the Flight Attendant's hotel with Salinas because Salinas had asked for a ride to pick up a bag of clothes from the hotel and that he never gave the Cell Phone to Salinas. See ECF No. 28-2 ¶ 4. In his affidavit, the defendant effectively declared that the Cell Phone was not his. See id. ¶¶ 4-5. In connection with that motion, the defendant also submitted an affidavit— purportedly from Salinas—which stated that the Cell Phone belonged to Salinas and that Salinas had asked the defendant to drive him to the hotel so that he could pick up what he thought were clothes from Panama. See ECF No. 25 at 5-6.

The Court denied the defendant's suppression motion in light of his insistence that the Cell Phone did not belong to him, which meant that he could not assert standing to challenge the Cell Phone's search. See Mem. & Order dated Jan. 13, 2023, ECF No. 38.

D. Trial and Guilty Verdict

Trial began on February 22, 2023. During its case in chief, the government established through exhibits and witness testimony that: (1) the defendant personally called the Flight Attendant to arrange the pick-up of cocaine (Trial Transcript ("Tr.") at 83-84; Government Exhibit ("GX") 401, 402); (2) the Cell Phone—which contained, among other things, several audio notes of the defendant's voice, threatening text messages regarding an informant in the defendant's prior drug case, and a video of the defendant— belonged to the defendant, and not to Salinas or anyone else (GX 6, 307, 312A, 316A, 314, 323A, 332); and (3) that the defendant used the Cell Phone to communicate with co-conspirators in Panama regarding the cocaine transaction (GX 300, 300T, 305, 330). Additionally, the government introduced lab reports and testimony from both HSI special agents and a chemist from the Drug Enforcement Administration to prove that the cocaine smuggled by the Flight Attendant from Panama weighed more than five kilograms (Trial Tr. at 138, 350; GX 500).

Following the conclusion of the government's case, the defendant testified on his own behalf. The defendant repeatedly perjured himself during that testimony. Among other things, the defendant falsely testified (1) that he was driving Salinas to the hotel as a favor to Salinas and that he believed Salinas was picking up clothing, Trial Tr. at 413; (2) that

he did not make any phone calls from the Cell Phone, which he claimed belonged to Salinas, to the Flight Attendant or others, id. at 446; (3) that he had not been involved in drug trafficking since he became sober, id. at 415; and (4) that a text message on the Cell Phone that said, "is me Frank" was written by him when he was forced to borrow the Cell Phone once from Salinas when his own phone had died.

On February 27, 2023, the jury returned a guilty verdict on the sole count of the Indictment. See ECF No. 66. As part of its verdict, the jury found that the defendant did not attempt to possess with intent to distribute more than five kilograms of cocaine, but instead found that the defendant attempted to possess with intent to distribute more than 500 grams of cocaine. Id.

II.    Applicable Law

The Sentencing Guidelines are advisory, not mandatory. United States v. Booker, 125 S. Ct. 738, 764-65 (2005). However, the Supreme Court held in Booker that the sentencing court must consider the Guidelines in formulating an appropriate sentence. Id. In Gall v. United States, 552 U.S. 38 (2007), the Supreme Court set forth the procedure for sentencing courts to follow in light of Booker:

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark.

Gall, 552 U.S. at 49 (citation omitted). Next, a district court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [the district court] may not presume that the Guidelines range is reasonable. [The district court] must make an individualized assessment based on the facts presented." Id. at 49-50 (citation and footnote omitted). Those statutory factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), and "the need for the sentence imposed [] (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant[,]" 18 U.S.C. § 3553(a)(2).

III.    Sentencing Guidelines Calculation and Proposed Enhancement

The PSR calculates a total offense level of 30 based on the defendant's attempt to possess between five and fifteen kilograms of cocaine. PSR ¶¶ 11-19. This offense level, with a criminal history category of II, carries a Guidelines range of 108 to 135 months' imprisonment. Id. at ¶ 69.[2]

_____

[2]    In his submission, the defendant points to the fact that the jury convicted him of possessing 500 grams or more of cocaine, and argues that because of the verdict, the

The government agrees with the PSR's Guidelines calculation but submits that a two-level enhancement for obstruction of justice under Guidelines Section 3C1.1 should be added. Section 3C1.1. states that:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1. Although "[t]his provision is not intended to punish a defendant for the exercise of a constitutional right," id. § 3C1.1, n. 2, the enhancement is applicable when the defendant committed obstructive conduct, including but not limited to: (i) threatening, intimidating, or otherwise unlawfully influencing a witness; (ii) committing, suborning, or attempting to suborn perjury; and (iii) providing materially false information to a judge. See id. § 3C1.1, n. 4. "Material" evidence is defined as "evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination." Id. § 3C1.1, n. 6.

The Second Circuit has also held that an enhancement for obstruction of justice is warranted where a defendant gives perjured testimony. United States v. Salim, 549 F.3d 67, 72-75 (2d Cir. 2008) (finding that the defendant's perjured testimony at the Fatico hearing regarding his motive for his scheme to assault his lawyers was material and false under § 3C1.1 for enhancement); United States v. Matos, 907 F.2d 274, 275-76 (2d Cir. 1990) (holding that evidence supported the district court's finding that defendant testified falsely with purpose of affecting outcome of suppression hearing and enhancement of the defendant's sentence for false testimony did not unconstitutionally chill the exercise of defendant's right to testify).

To apply the enhancement, a Court must find the following by a preponderance of the evidence: that the defendant (1) intentionally; (2) gave false testimony; as to (3) a material matter. United States v. Dunnigan, 507 U.S. 87, 95 (1993); Zagari, 111 F.3d at 329.

---

defendant's base offense level should be 24, and not 30. Def. Sentencing Mem. at 9-10, ECF No. 92. It is well-established that issues relevant to sentencing are determined by the Court using a preponderance of the evidence standard. United States v. Johnson, 507 F.3d 793, 797 (2d Cir. 2007) ("district courts may find facts relevant to sentencing—as opposed to elements of the offense—by a preponderance of the evidence and in doing so may take into account acquitted conduct when sentencing defendants"). In light of the unrebutted evidence presented in this case about the quantity of cocaine the defendant attempted to possess, (see GX 500; Trial Tr. at 350-355), the Probation Department correctly calculated the base offense level as 30.

Here, the defendant obstructed justice on three separate occasions: first, when he submitted a sworn, false affidavit to the Court indicating that the Cell Phone did not belong to him and that he had driven to the hotel as a favor to Salinas; second, when he induced Salinas to submit a sworn, false affidavit stating that the Cell Phone belonged to him and that he had asked the defendant to drive him to the hotel as a favor;[3] and third, when he testified falsely at trial.

The defendant's repeated, sworn assertions that the Cell Phone did not belong to him and that he only drove to the hotel as a favor to Salinas so that Salinas could retrieve clothes delivered from Panama meets all of the criteria for the enhancement. The fact that the defendant made these statements repeatedly reflects the intentional and premeditated nature of his false testimony. The defendant's repeated false statements were not merely a general denial of responsibility, but his efforts—including inducing the perjured statements of Salinas—reflected an extensive subterfuge that was clearly intended to undermine the administration of justice.

There is likewise no question that the defendant's trial testimony was false. Indeed, the jury's finding beyond a reasonable doubt that the defendant attempted to possess with the intent to distribute cocaine is irreconcilable with the defendant's testimony that he did not own the Cell Phone that arranged the drug transaction and that he honestly believed he was driving to pick up clothes. Indeed, this Court found that the defendant's testimony at trial — "that he did not use the [Cell Phone], had never communicated with any of the parties to the drug transaction, and was only present outside the hotel because Salinas had asked for a ride to pick up clothing" — "stretch[ed] credulity" in light of the government evidence. Mem. & Order dated June 6, 2023 at 19, ECF No. 86.

Finally, these falsehoods were undoubtedly material, i.e., they were statements that "would tend to influence or affect the issue under determination." Salim, 549 F.3d at 73 (quoting U.S.S.G. § 3C1.1, n.6). As the Court found in its decision denying the defendant's post-trial motion pursuant to the Federal Rule of Criminal Procedure 29, "[m]uch of the dispute at trial focused on a single issue: the identity of the user of the [ ] Cell Phone. And unsurprisingly so, as the evidence from that phone would tend to incriminate its user." Mem. & Order dated June 6, 2023 at 11, ECF No. 86 (emphasis added).

In light of these facts, a two-point enhancement for obstruction of justice is necessary to reflect the severity of the defendant's obstructive efforts. The resulting total offense level should therefore be 32, and the advisory Guidelines range should be 135 to 168 months' imprisonment, given that the defendant is in Criminal History Category II.

---

[3]     HSI agents surveilling the defendant and Salinas after their arrest repeatedly saw the defendant with Salinas, and when agents confronted Salinas about why he had recanted his post-Miranda statement, Salinas said in sum and substance that he did what he needed to do to protect his family.

IV.     Discussion

A sentence at the high-end of the Guidelines range, after accounting for the proposed two-point enhancement for obstruction of justice, would fulfill the goals of Title 18, United States Code, Section 3553(a).  In particular, a sentence of 168 months' imprisonment would reflect the seriousness of the offense and the defendant's surrounding conduct; account appropriately for his history and characteristics; afford adequate deterrence; and promote respect for the law.

As an initial matter, the conduct here is serious.  The defendant attempted to smuggle more than five kilograms of an illegal and dangerous substance from Panama into the United States—an offense for which Congress has prescribed severe mandatory minimum sentences.  The quantity of narcotics alone brings this case beyond the so-called "garden-variety federal drug case" to which the defendant seeks to favorably compare his crime.  Def. Sentencing Mem. at 10, ECF No. 92.

But the need for a significant sentence of incarceration goes beyond simply the amount of drugs at issue.  The defendant's role in the offense was a significant one.  As shown at trial, the defendant was not merely a drug courier, but someone who coordinated directly with international members of the drug trafficking conspiracy—including the man identified as "Mopri," who is believed to be a high-ranking member of a drug cartel in Panama.  The defendant likewise employed sophisticated means to facilitate his crime and avoid detection: he used multiple phones, spoke in code, used disappearing messaging functions on encrypted messaging applications and arranged for a third-party (Salinas) to retrieve the smuggled narcotics on his behalf.  And the defendant compounded his crime by committing perjury and inducing Salinas to do the same.  Ultimately, this is far from a typical courier case in which a defendant merely agrees to take a package containing drugs from point A to point B.

The defendant's history and characteristics only underscore the need for a sentence beyond what would be imposed for the "garden-variety" narcotics offense.  Put simply, the defendant has been involved in the international drug trade for his entire adult life. He was convicted of attempting to smuggle more than 26 kilograms of cocaine into the United States when he was 19 years old; he pled guilty to distributing heroin, a charge arising from his efforts to smuggle heroin and cocaine from Panama and distribute those drugs in the United States; and was arrested for the instant offense less than three years after being released from custody.  See PSR ¶¶ 6-7, 21-22.  The defendant has been incarcerated three times as an adult, all for narcotics trafficking, and despite those terms of incarceration, he has still failed to conform his conduct to the law.

If anything, the defendant's criminal conduct appears to be growing increasingly brazen.  As the government showed at trial, approximately six months before his arrest for the instant offense, text messages on the Cell Phone reflect the defendant sending menacing text messages to an unknown individual about the confidential informant who cooperated against the defendant in Vermont (i.e., the "VT rat").  See GX 332.  After his arrest in this case, the defendant  also submitted a perjured affidavit from Salinas attempting to exculpate the

defendant.  Far from being chastened by his time in prison, the defendant appears to have been emboldened to commit increasingly serious offenses.

Most of the facts the defendant offers as mitigation in his sentencing submission actually show why no downward departure from the Guidelines range is warranted here.  For one thing, the defendant continues to deny his conduct and has refused to take responsibility for his crimes.  While the defendant claims that his prior drug crimes resulted from his own addiction to drugs, he also claims to have been sober since 2019, meaning that the instant offense did not result from clouded judgment or the need to finance his alleged habit.  Likewise, the defendant emphasizes his employment history, his involvement in his children's lives, and his work in the community; but these factors all point to someone who had the options, support and resources necessary to help him avoid committing serious crimes.  And while the defendant's upbringing certainly appears to have been chaotic and he seems to have suffered real trauma in his life, it is not at all clear how that trauma led him to engage in the conduct at issue here.  The defendant's crimes did not result from a momentary lapse of impulse control or bad judgment, but rather involved a sophisticated, pre-meditated drug-smuggling operation and significant efforts to avoid being held accountable for that conduct.

In the same vein, a significant prison term—one at the top of the Guidelines' range urged by the government—is necessary here to incapacitate and deter the defendant from engaging in additional criminal activity.  The defendant served a four-year sentence for his initial drug conviction in Panama and 20 months for his conviction in the District of Vermont.  PSR ¶ 22.  Likewise, the defendant also served nearly two years in custody awaiting trial for a murder he was indicted in the Southern District of New York for committing, prior to that charge being dismissed.  It is clear that none of these experiences in prison were sufficient to deter the defendant from continuing to engage in criminal activity, and that a much more meaningful custodial sentence is necessary in order to do so.  What is more, given the defendant's past attempts to threaten or influence potential witnesses in his cases, i.e., identifying the informant in his Vermont case and soliciting a false affidavit from Salinas, the punishment here should include a significant period of incarceration necessary to deter such future conduct and adequately protect the community.

Finally, a sentence of 168 months' imprisonment would promote respect for the law.  Both the defendant's escalating pattern of drug crimes and his obstructive conduct reflect a disregard for the law and for the judicial system.  A substantial sentence is necessary to send the appropriate message that such blatant disregard will not be tolerated.

V.     Conclusion

        For the foregoing reasons, the government respectfully submits that a sentence of 168 months' imprisonment is sufficient but not greater than necessary to accomplish the goals of sentencing.

Respectfully submitted,

BREON PEACE
United States Attorney

By:           /s/
           Gabriel Park
           Joshua B. Dugan
           Assistant U.S. Attorneys
           (718) 254-6099 (Park)

cc:    Clerk of the Court (EK) (by ECF)
       James Branden, Esq. (by ECF)